Good morning, Your Honors, and may it please the Court, Doug Keller on behalf of Ms. Rodriguez. The lower court reversibly erred when it denied Ms. Rodriguez's habeas petition. The record establishes that she can meet both prongs of the ineffective assistance test. With respect to the first prong, the deficient performance prong, this Court's decision in Bonilla and the Supreme Court's decision in Padilla set out the controlling standard. Under both of those cases, before an alien can plead guilty to an offense that unambiguously qualifies as an aggravated felony, defense counsel must advise the client that the removal is virtually certain or worse to that effect. As this Court said in Bonilla, quote, a criminal defendant who faces almost certain deportation is entitled to know more than it is possible that a guilty plea could lead to a removal. He is entitled to know that as a virtual certainty. Here, Ms. Rodriguez's guilty plea meant she faced almost certain deportation. The crime she was pleading guilty to, 8 U.S.C. 1324A2, is expressly cross-listed as an aggravated felony. That meant her attorney needed to tell her that her removal was virtually certain, but he didn't do that. And we know he didn't do that because he all but confessed he didn't do that in his declaration in the lower court. When he was asked to provide, quote, all the advice he gave Ms. Rodriguez, he confessed that he had told her only that she had, quote, the potential to be removed. That's simply insufficient under Padilla, and it's insufficient under Bonilla. The question then becomes whether she suffered prejudice. The prejudicing court requires this court to ask itself whether, if Ms. Rodriguez had been properly advised, would she have been rational in rejecting the plea deal. And I think we know she would have been rational in rejecting the plea deal because when she was first faced with a plea agreement that unambiguously communicated to her that she would be ordered removed, she rejected that plea. Specifically, the first plea required her to stipulate to her own removal, and she rejected that plea agreement. That decision was certainly rational, given that she had lived here since she was a child. She had a lot to lose by agreeing to her own removal. She could have either gone to trial or she could have asked her attorney to ask the government for a different plea deal. And as I note in my brief, there's at least a couple plea deals the government in our district regularly gives to aliens who are otherwise guilty of 1324A2, specifically aiding and abetting an illegal entry or accessory act of the fact to 1325. And because of that, the record conclusively establishes she also suffered prejudice. If the court has no questions, I'd be happy to... What level of expertise could fairly be expected of criminal defense counsel? Sometimes it doesn't take a lot of in-depth knowledge of immigration law to understand what the consequences may be, but sometimes it's more difficult. Where's that line drawn? Well, I think in this case, it's sort of an easy case, because all defense counsel had to do was open up 1324 and see if it was cross-listed as an aggravated felony, and that's really all he needed to do. Certainly, there's going to be cases in which there's going to be a difficult issue of line drawing. The defense counsel might need to use the modified categorical approach, and it's going to be less clear whether the real consequence is clear or not. But of course, Padilla says in those situations, defense counsel merely needs to tell the client that they may be removed, and that's it. But I don't mean to skirt your question, but I think this case is just an easy case. And in this case, the possibility was identified. And the question becomes, for me, I guess, is this case one of those where the immigration consequences were so apparent that it's appropriate to require a defense counsel to say, look, there could be a miracle, but it's not likely to happen. You're likely going to be deported. Right. And I think this case is as easy as you're going to see. It's even easier than in Padilla. At least in Padilla, it dealt with a state crime, and so arguably, there was a little – potentially a little confusion about how it matched up to the federal offense. But here, it's a federal offense that's expressly cross-listed as an aggravated felony. I just don't think it gets any easier than that. Thank you, counsel. Good morning, Your Honors. My name is Julia Klein, and I represent the United States today in this case. I would like to start by focusing on the holding by the Supreme Court in Padilla. The holding is that counsel must inform a client that her plea carries a risk of deportation. It does not specify or require the defense attorney to precisely quantify the risk of deportation, but inform the client of the immigration consequences, along with all the other consequences that could potentially come from the guilty plea. In this case, there was a written plea, which is different than in Bonilla, in which this court specifically noted there was no written plea that Bonilla benefited from. In open court, she acknowledged she read the entire plea agreement, initialed each page, understood the terms and conditions, and also the plea agreement itself states that she is pleading to a removable offense. Now, we've heard that the appellant went to high school in the United States. She understands English. There's no indication that she did not understand the terms of the plea agreement. Are you talking about prejudice here, or are you talking about the duty of the attorney? Duty of the attorney. Okay. And you say the attorney's duty is, the attorney is relieved of his duty if things are made clear to her elsewhere. Is that right? What is the attorney's duty then? The attorney's duty under Padilla is to inform her of the risk, and in fact, the defense counsel stated that he met with several occasions, he met with the appellant regarding the potential immigration consequences, reviewed the plea agreement carefully, and answered all questions. This is unlike the facts of Padilla. Did he say he advised her that her removal was a virtual certainty, or it was a substantial likelihood, or what? What did he say that he advised her? In the declaration, he said she could be deported with a misdemeanor 1324 conviction. She said, I explained to Ms. Rodriguez that I believed she had a better chance with immigration with a misdemeanor than a felony. That is true, Your Honor. However, I explained that she could be deported with a misdemeanor. So he advised her there was a possibility of deportation, right? Yes, and in fact, in her immigration proceedings, she contested removability on that very issue. She contested her removability in immigration court based on the fact that she had been convicted of a misdemeanor, not a felony. She was not very successful with that argument. Well, her case is still pending. I believe she has a court date August 25, 2016 in San Francisco. She is still fighting her case two years, three years later after the plea. And is that going to determine whether the attorney gave her the proper advice? No, Your Honor, but it does. But isn't that our job here to see whether the attorney complied with his obligation? And his obligation, I gather, you believe is satisfied by what he says in his affidavit. I explained there was a potential to be deported based on immigration status. I explained that pleading to a misdemeanor was no guarantee of her ability to remain in the United States. I explained that she had a better chance with immigration with a misdemeanor than a felony. Your Honor, I think that supports the fact that defense counsel thoroughly thought this out, talked to the defendant. This is also evidenced by what was mentioned earlier in the change in the plea. The original plea included a stipulated removal. The plea that was signed with a misdemeanor took that out and substituted the immigration consequences. This indicates that her defense attorney was dealing with immigration consequences, was listening to her, negotiated a deal that was a misdemeanor that included a reduction for acceptance of his responsibility, fast track. And this is much different than in Padilla, where none of the immigration consequences were explained to the defendant. In fact, in Padilla, the defense counsel told him the opposite, that he did not have to worry about immigration status. There's no doubt that the facts are not the same as in Padilla. No doubt about that. But Padilla says the consequences of the plea could easily be determined from reading the removal statute. His deportation was presumptively mandatory. This one was also, some courts say presumptively mandatory, some say virtually certain. And your position is that it's enough to say, well, there's a possibility. Well, Your Honor, if you look at the virtual certain language that is in Padilla, it's talking about raising the standard. When there's no removal possibility, you don't have to spend much time talking about it. When it's vague, you need to tell your defendant it's vague. When it starts getting to the point where it is a removable fence, Padilla says the consequences of removal become more certain or clear. The responsibility of the defense counsel to discuss and give correct advice is equally clear. It doesn't say that they have to give the defendant a percentage, quantify. As we all know, immigration law is very complex. It's ever-changing. It changes the policy. Your opponent says this was not very complex, that this fell within the category of presumptively mandatory, virtually certain. I mean, the courts have used a whole series of words to describe it when you're going to be deported, as opposed to a possibility of being deported. But one thing that I was curious about, your brief seemed to suggest that we didn't have to follow the language of Bonilla because there were subsequent Supreme Court opinions that didn't adopt that language. Not that rejected it, but that didn't adopt it. Is that your position, that when we have an opinion, we no longer have to apply it unless the Supreme Court has also adopted that opinion? No, Your Honor, I can clarify. The part in Bonilla where the virtual certainty that that language is raised wasn't necessary in Bonilla because both the government and the Supreme Court adopted it. So your argument then is it's dictum, not that the Supreme Court hasn't adopted it? Your Honor, in Bonilla, it's not necessary for the holding. Does that mean it? Is that the same as saying dictum? I would agree, Your Honor. I agree. That was a question. No, yes. I would say that it's dictum. It wasn't necessary in Bonilla because both parties in Bonilla agreed that there was ineffective assistance of counsel. In Bonilla, the attorney basically didn't answer any of his questions on immigration, didn't answer his family's questions on immigration. It doesn't matter whether the facts are different. The question is, you're saying that although the language in Bonilla requires that you advise counsel of more than a possibility, that that language is dictum and we should disregard it? Your Honor, I don't think that it needs to be disregarded. I think when we refer back to Padilla, it deals with the level of conversation that the defense counsel has to have with his client. That as you increase that level, that you need to have that conversation. It's similar to a sentencing issue. Like in this case, a sentencing issue with 60 days or low end. The defense counsel did not have to spend a lot of time on this. It's half similar to a sentencing issue in that the court has no control over what the immigration department does. Before a judge in sentencing and you tell the client, you know, judge has discretion and I can't guarantee you what the judge is going to do, but you're there. It's all before the judge. Here what you tell the client is not what's going to happen in this proceeding, but what's going to happen to you in what's probably far more important than whether you get a 60 day sentence or not. My continuation of that was that if you're dealing with a drug crime and there's a minor role issue, a safety valve issue, you're going to spend a lot more time talking about those consequences. It is clear on the record that immigration was talked about from day one in this case. We don't have any disagreement about any of those things. There's no question they talked a lot about immigration. The question is, was he required to tell her that it's a virtual certainty, it's mandatory, or whatever the immigration consequences really are? Or could he say, look, you know, immigration is a real problem. You know, you might be deported. It's a possibility. Is that enough? If you're right that that's enough, you win. If you're wrong that that's not enough. I mean, nobody's disputing that they talked about it. The question is, did he give the advice he was required to give? And so that's the only issue that you should really address. I mean, I think I understand your argument, and that's enough to tell him that it's possible you'll be deported. But in fact, he told her she would be removed, even with a misdemeanor conviction. She would be removed? There's a possibility. Right. There's a possibility. That's how I see it. That's your position, and all he has to do is tell her there's a possibility. What's your assessment of the immigration risk here? Is this a hard case, or is it an easy case to assess the prospect of removal? The prospect of removal. It's really the question I posed to the defense counsel, and his response was, this one isn't hard. You check, you see where this offense is listed. Is that correct or not? That is correct. It is a removable offense as an aggravated felony. And not just a removable offense, but granted, we have more exposure to immigration cases than most criminal law practitioners, but it doesn't strike me as a real heavy lifting kind of question either. I mean, it seems like the prospects for removal are more than a possibility. It's more like a strong probability. Maybe not virtual certainty, but it's kind of well up there on the scale. Do you disagree with that proposition? I don't, Your Honor. It's an aggravated felony with very limited avenues of relief. And three months ago, I would have said there was no avenue of relief. There's a recent BIA case that said that green card holders that have been convicted of aggravated felonies can adjust in the United States under different circumstances. This was, you know, something that had never been done until two, three months ago. It's ever-changing. It is a removable offense as an aggravated felony. It carries very little avenues of relief. As the magistrate judge said, there's still the avenues of relief of withholding, convention against torture. We also have the whole area. But that really, and again, that's something we're more familiar with perhaps than most people, but that really doesn't happen very often, does it? Not for me. And so the question becomes, I don't really fault what the attorney said in terms of its accuracy, but some things are possible and some things are real possible and some things are the far side of the moon impossible. This one seems to be pretty far along the scale. I don't know whether I'd adopt the words virtual certainty, but it's not too far from that at best. So why isn't it under our precedent, the obligation of defense counsel to say more than it's a possibility and talk about the possibility? Why isn't it say, look, your prospects aren't very good at all. There's hope. He's probably not wrong when he says it's a little better that it's a misdemeanor than a felony because the appearances are better. So I'm not saying that's wrong, but the question is, why isn't he obligated to say more than, at least according to the declaration that we have in front of us, more than he said? And I think I refer back to Padilla, the risk of deportation, and asking the defense attorney to quantify that in this ever-changing immigration world. It is clear it was discussed. The stipulated removal was taken out so that she could fight her immigration case. She is fighting her immigration case. And as Strickland makes clear, no particular set of detailed rules for counsel's conduct can specifically take into account the variety of circumstances. So the immigration consequences were explained to her. She was given 60 days and a misdemeanor instead of a felony. She got other benefits from her plea bargain. It's a part of the decision in a plea bargain. Here, the defense attorney specifically talked to her about the immigration circumstances, told her that it was probably a removable offense as a misdemeanor. Again, that is what she argued with the immigration judge. Albeit not successfully, it did give her an opportunity to contest her removability and make an argument that is not final as we sit here today and that her immigration case is still going. Under executive action, the president may choose not to deport her at the end of this whole row. And what's the court going to say when he tries to do that? He probably exceeded his authority as a president. They may, but because of the immigration issue. But if you're down to relying on the fact that the president may decide she shouldn't be deported, you're not in good shape. That is true, Your Honor. But like I said, it used to be a golden rule that no person with a green card could keep their green card with aggravated felony and adjust, and that's changed in the last couple months. This is a case where the record is clear that the appellant was informed by her attorney of the immigration consequences. The magistrate judge went over it in the plea, said there's a clause here that has immigration consequences. The plea itself, which she initialed and the defense counsel went over, said this is a removable offense. The magistrate was correct in denying her motion to withdraw her plea. Defense counsel, I think your time is over. Do you need a final sentence? That's my final sentence, Your Honor. Thank you very much. Just a few quick points, Your Honors. First, Judge Clifton, regarding your concerns about how difficult of an issue this might have been for defense counsel and how much we should expect from defense counsel, I would point your Honor to the amicus brief that cites numerous resources that defense counsel could have looked at, in this case and other cases, to get the help they might need to make even difficult calls correctly. Second, with regard to the ongoing immigration proceedings, the immigration judge has already rejected the argument that Ms. Rodriguez is not removable. It's only pending, waiting for this court to decide whether she received ineffective assistance. Initially, the immigration judge, in fact, ordered her removed. There was an appeal to the BIA only on the issue of whether she should have been granted a continuance in light of this court's decision or this court's proceedings. The BIA then remanded the case back to the immigration judge, so the immigration judge is just waiting for this court. It has nothing to do with whether she's removable or not. She's waiting for this court. She's probably got years left in this country without question. I won't comment on that, Your Honor. Finally, just quickly about Bonilla, this court's statements about the virtual certainty statement could not have been dicta. This court noted, twice at least, that the defendant in that case understood that he possibly could be removed, and he knew that because he asked his defense counsel whether he could be removed. So this court was faced with sort of a similar situation here, which is what happens when a defendant understands that they might be removed. Do they need to be told more? And I think this court in Bonilla said that, yes, they do need to be told more, and I'd ask that court to hold the same here. Thank you, counsel. Thank you. Case to target will be submitted.
judges: Reinhardt, Fernandez, Clifton